## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

DONALD DELK and SANDRA DELK,

     Plaintiffs,

v.                                    Case No. 5:14-cv-469-Oc-32PRL

BANK OF AMERICA, N.A.,

     Defendant.

_____

## O R D E R

    This case arises out of the Plaintiffs Donald and Sandra Delk's claim that Defendant Bank of America, N.A. mistakenly foreclosed on the Delks' property when it meant to foreclose a property nearby. This case is before the Court on Bank of America's Motion for Partial Summary Judgment as to the Delk's claims for negligence (Counts III and IV), intentional infliction of emotional distress (Counts V and VI), and certain types of damages, fees, and costs. (Doc. 68.) The Delks filed their response in opposition (Doc. 69), to which Bank of America replied (Doc. 76). On November 16, 2015, the Court held a hearing on the motion, the record of which is incorporated herein. (See Doc. 80.) Following the hearing, the parties notified the Court that they were not proceeding with settlement negotiations and asked the Court to rule on the pending motions. (Doc. 81.)

## I.    BACKGROUND

    In 2006, Brian Dillon became the owner of real property located at 3148 N. Bravo Dr., Beverly Hills, Florida (the "Dillon Property"). (Doc. 69 at ¶ 6.) Dillon

executed and delivered a mortgage (the "Dillon Mortgage") drafted by Bank of America, which contained a correct legal description, but listed an incorrect address of 5325 W. Mustang Blvd., Beverly Hills, Florida, 34465. (<u>Id.</u> at ¶¶ 7-9.)

In August 2009, Bank of America foreclosed on the Dillon Mortgage and received a Final Judgment of Mortgage Foreclosure in May 2010. (<u>Id.</u> at ¶ 12.) In the midst of these foreclosure proceedings, on March 13, 2010, the Delks purchased real property at 5325 W. Mustang Blvd., Beverly Hills, Florida (the "Delk Property")—the same address listed on the Dillon Mortgage—and began building a single family residence there.[1] (<u>Id.</u> at ¶¶ 1, 5.)

After a foreclosure sale in 2012, a Certificate of Title issued to Bank of America, which hired various vendors to preserve, maintain, market, and sell the Dillon Property. (<u>Id.</u> at ¶¶ 14, 16.) According to the bank, it hired the vendors to do preservation work on properties acquired through foreclosure, including determining occupancy status and maintaining the lawn. (Doc. 68 at 6; Doc. 68-1 at 9.) The bank provided the vendors with the Mustang address listed on the Dillon Mortgage, and therefore those vendors entered the Delk Property without consent to perform their duties. (Doc. 68 at ¶ 29.) As a result, the Delks hired attorney Donald Perrin, who advised Bank of America's real estate agent and broker, Sun Crest Florida Properties, LLC, and its foreclosure counsel, Marshall Watson, that the Delks owned the Delk

---

[1] The Delks' Statement of Undisputed Facts cites the Deposition Transcript of Sandra Delk, Ex. D at 11:2-4 (Doc. 69-4) to support this fact, but the Delks did not include page 11 in the exhibit submitted to the Court. (Doc. 69 at ¶ 5.)

Property, trespasses were occurring, and demanded that the trespasses cease.[2] (Id. at ¶¶ 19-20.) In addition, the Delks retained another attorney to file a quiet title action against Bank of America in November 2012. (Id. at ¶ 26.) In April 2013, the parties entered into a "Stipulation Vacating Default Entered Against Defendant Bank of America, N.A," which stated that Bank of America had no claim, right, or interest in the Delk Property. (Id. at ¶ 27.) Accordingly, in June 2013, Bank of America updated its systems to reflect the correct physical address of the Dillon Property. (Doc. 68 at ¶ 10.)

Nevertheless, Bank of America's vendors continued to enter the Delk Property after April 2013. (Doc. 69 at ¶ 28.) In addition, at some point in 2013, Bank of America sold the Delk Property at auction to Michael Young,[3] though the sale never closed.[4] (Id. at ¶¶ 23-24.)

---

[2] The Delks' Statement of Undisputed Facts cites the Deposition Transcript of, Maria Cubelo Hinton (an agent for Sun Crest Florida Properties, LLC), Ex. C at 37:4-39:14 (Doc. 69-3), to support the fact that Perrin sent a letter to Watson. (Doc. 69 at ¶ 20.) The cited material, however does not specify that Perrin sent a letter to Watson, but instead describes Ms. Hinton's growing awareness of a discrepancy between the physical address and parcel ID. (Doc. 69-3 at 4-5.)

[3] The Delks' Statement of Undisputed Facts states that Bank of America sold the Delk Property at auction to Michael Young in November 2013. (Doc. 69 at ¶ 23.) The evidence cited to support that fact, however, does not state the date of the sale, but merely that the sale occurred. (Doc. 69 at ¶¶ 23-24; Doc. 69-1 at ¶¶ 26-27.) Bank of America's Statement of Undisputed Facts does not mention the sale to Young. (Doc. 68 at 2-4.)

[4] The Delks' Statement of Undisputed Facts cites the Deposition Transcript of Chad Anderson, Ex. B at 89:5-10 (Doc. 69-2) to support this fact, but the Delks did not include page 89 in the exhibit submitted to the Court. (Doc. 69 at ¶ 24.)

On April 10, 2014, the Delks filed a complaint in Florida state court, bringing claims for trespass, negligence, negligent and intentional infliction of emotional distress, and defamation against Bank of America. (Doc. 1, Ex. A.) Bank of America subsequently moved to dismiss certain counts of the complaint, which the state court granted on August 12, 2014. (Doc. 1.) On August 18, 2014, the Delks filed an amended complaint in state court that dropped their negligent infliction of emotional distress and defamation counts. (Doc. 2.) On August 22, 2014, Bank of America removed the case to this Court (Doc. 1), and, on August 28, 2014, filed a motion to dismiss certain counts of the amended complaint (Doc. 7). The Delks responded to the motion to dismiss on September 8, 2014. (Doc. 11.)

On December 18, 2014, the Court granted the motion to dismiss, dismissing both claims for intentional infliction of emotional distress and granting leave to file a second amended complaint by January 16, 2015. (Doc. 19.) On January 9, 2015, the Delks filed their Second Amended Complaint ("SAC"), which alleges six counts including, trespass (Count I); trespass – vicarious liability (Count II); negligence (Count III); negligence – vicarious liability (Count IV); intentional infliction of emotional distress (Count V); and intentional infliction of emotional distress – vicarious liability (Count VI). (Doc. 20.) This time, Bank of America elected to answer. (Doc. 23.)

After several months of discovery, Bank of America now moves for partial summary judgment on the negligence and intentional infliction of emotional distress claims, and requests that the Court make certain findings as to possible damages, fees,

and costs. (Doc. 68.) The Delks filed their response in opposition (Doc. 69), to which

Bank of America replied (Doc. 76). Thus, the motion is ripe for this Court's review.

## II.    STANDARD OF REVIEW

Summary judgment is proper where "there is no genuine issue as to any

material fact" and "the movant is entitled to judgment as a matter of law."   Fed. R.

Civ. P. 56(c). "The burden of demonstrating the satisfaction of this standard lies with

the movant, who must present pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, that establish the absence of

any genuine material, factual dispute." Branche v. Airtran Airways, Inc., 342 F.3d

1248, 1252-53 (11th Cir. 2003) (internal quotations omitted). An issue is genuine when

the evidence is such that a reasonable jury could return a verdict for the non-movant.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

In determining whether summary judgment is appropriate, a court must draw

inferences from the evidence in the light most favorable to the non-movant and resolve

all reasonable doubts in that party's favor. See Centurion Air Cargo, Inc. v. United

Parcel Serv. Co., 420 F.3d 1146, 1149 (11th Cir. 2005). However, "Rule 56 mandates

the entry of summary judgment, upon motion, against a party who fails to make a

showing sufficient to establish an element essential to his case on which he bears the

burden of proof at trial."   Schechter v. Ga. State Univ., 341 Fed. Appx. 560, 562 (11th

Cir. Aug. 12, 2009) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

## III.   ANALYSIS

### A.   Negligence

Federal courts sitting in diversity apply the substantive law of the forum state. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Under Florida law, a plaintiff must prove four elements to prevail on a negligence claim: (1) the defendant owes a legal duty to the plaintiff; (2) the defendant breached that duty; (3) the defendant's breach legally caused an injury to the plaintiff; and (4) damages resulted from the injury. See Sexton v. U.S., 132 F. Supp. 2d 967, 974 (M.D. Fla. 2000). The Florida Supreme Court has held that while breach, causation, and damages are ordinarily questions for the jury, "duty exists as a matter of law and is not a factual question for the jury to decide." McCain v. Fla. Power Corp., 593 So. 2d 500, 503 (Fla. 1992).

Here, Bank of America disputes whether it owed any duty to the Delks, as it had no relationship with them prior to the foreclosure activities leading to these proceedings.[5] (Doc. 68 at 5-6.) It remains silent regarding the breach, causation, and damages elements of negligence. The Delks argue that Bank of America had a duty to conduct its mortgage activities—particularly its foreclosures—in a reasonably prudent manner (Doc. 69 at 10), and identify three sources of this duty: legislative enactments,

---

[5] The Court notes Bank of America's other argument that there is no cause of action in negligence for unauthorized entry upon land. This argument mischaracterizes the Delks' negligence claims. It is clear from the complaint (Doc. 20) and the Delks' response (Doc. 69) that they claim Bank of America acted negligently in connection with its mortgage preparation and foreclosure activities, not its physical entry upon the property. The Court will analyze the Delks' negligence claims accordingly.

judicial precedent, and those duties arising from the general facts of the case. See McCain, 593 So. 2d at 502.

First, the Delks argue that § 697.10, Fla. Stat., imposed a duty on Bank of America to prepare its mortgage and foreclosure documents in a manner that would not impair their title to real property. Section 697.10 provides that:

> [i]n any action relating to real property, if the court shall find that any person has prepared an instrument which due to an inaccurate or improper legal description impairs another person's title to real property, the court may award to the prevailing party all costs incurred by her or him in such action, including reasonable attorney's fees, and in addition thereto may award to the prevailing party all actual damages that she or he may have sustained as a result of such impairment of title.

Fla. Stat. § 697.10 (emphasis added).

The undisputed facts of this case demonstrate that the error in the Dillon Mortgage was an incorrect address, not an incorrect legal description per se. (Doc. 69 at 4, ¶ 9.) Nevertheless, the Court is not yet prepared to rule as a matter of law that the statute does not apply.[6]

The Delks have not provided any examples of case law—the second alleged source of duty—in which a duty arose between a foreclosing bank and a homeowner whose home was improperly seized in a foreclosure proceeding. Thus, the Court turns to the third source of duty—the general facts of the case—to uncover a source of duty.

---

[6] As of December 30, 2015, searches of both Westlaw Next and Lexis Advance reveal that this statute has never been cited by a court in a case available on either database. Because the Court finds another available source of duty, see infra, pp. 8-9, the Court will reserve ruling on the statute's applicability at this time.

This argument has merit. Pursuant to the "undertaker's doctrine," one who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care, if (1) the failure to exercise reasonable care increases the risk of such harm; (2) he has undertaken to perform a duty owed by the other to the third person; or (3) the harm is suffered because of reliance of the other or the third person upon the undertaking. See Lipkin v. Norwegian Cruise Line Ltd., 93 F. Supp. 3d 1311, 1326 (S.D. Fla. 2015) (citing Clay Elec. Co-op., Inc. v. Johnson, 873 So. 2d 1182, 1186 (Fla. 2003)); Restatement (Second) of Torts § 324A (1965). Comment b of the Restatement (Second) of Torts explains that § 324A applies to any undertaking to render services to another, where the actor's negligent conduct results in physical harm to the third person or his things. See Restatement (Second) of Torts § 324A, Comment b (1965) (emphasis added).

Here, Bank of America undertook the responsibility of drafting the Dillon Mortgage and enforcing its terms, including engaging in foreclosure activities. The bank's conduct in listing an improper address created a foreseeable zone of risk that a third party such as the Delks could be injured. The Court finds that it was foreseeable that the Delks would rely on Bank of America to correct its mistake and correct the inaccuracies in the Dillon Mortgage, and that Bank of America had a duty to lessen the risk of harm to the Delks. See Assouman v. Bank of Am. Corp., No. 207-CV-151-FTM-29SPC, 2008 WL 2262031, at *3 (M.D. Fla. May 30, 2008) (denying

defendant's motion for summary judgment on plaintiff's negligence claim where defendant bank "may have undertaken a duty" to return mistaken checks to a third party and explain bank's error). Due to Bank of America's conduct, the Delks have allegedly suffered harm to their "things"—specifically parts of their property such as the fence, elements of the house, and the driveway. See Ramjeawan v. Bank of Am. Corp., No. 09-20963-CIV, 2010 WL 1645097, at *3 (S.D. Fla. Apr. 21, 2010) (denying motion in limine of defendant claiming that the "undertaker's doctrine" is expressly limited to cases involving physical harm) (citing Banfield v. Addington, 104 Fla. 661, 667 (1932) (holding that one who undertakes to act is under an implied legal duty to act with reasonable care to ensure that the person or property of others will not be injured as a result of the undertaking)). The Court finds that Bank of America owed a duty to the Delks under the facts of the case, and material factual disputes remain as to the remaining elements of negligence.

Thus, Bank of America's motion for summary judgment as to the Delks' negligence claims (Counts III and IV) is due to be denied.

**B.     Intentional Infliction of Emotional Distress**

Under Florida law, to state a claim for intentional infliction of emotional distress, the plaintiff must establish the following: (1) defendant acted recklessly or intentionally; (2) defendant's conduct was extreme and outrageous; (3) defendant's conduct caused the plaintiff's emotional distress; and (4) plaintiff's emotional distress was severe. See Metropolitan Life Ins. Co. v. McCarson, 467 So. 2d 277, 278–79 (Fla. 1985). Courts uphold claims for IIED in only "extremely rare circumstances." Id.

(quoting <u>Gonzalez–Jimenez de Ruiz v. United States</u>, 231 F. Supp. 2d 1187, 1199 (M.D. Fla. 2002)).

"Whether alleged conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a matter of law, not a question of fact." <u>Frias v. Demings</u>, 823 F. Supp. 2d 1279, 1288 (M.D. Fla. 2011) (quoting <u>Gandy v. Trans World Computer Tech. Grp.</u>, 787 So. 2d 116, 119 (Fla. 2d DCA 2001)). This is an objective question, and the subjective response of the victim does not control. <u>See</u> <u>id.</u> Florida courts use a very high standard in evaluating whether the facts alleged are sufficiently outrageous. <u>Id.</u> In defining what constitutes "outrageousness," the Florida Supreme Court has adopted the language of Comment d to the Restatement (Second) of Torts, which states:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

<u>Metropolitan Life</u>, 467 So. 2d at 278 (citing Restatement (Second) of Torts, § 46). Thus, "[t]here are only a very limited set of cases in which courts [have] recognized conduct as sufficiently egregious to support a claim of intentional infliction of emotional distress." <u>Bakar v. Bryant</u>, No. 13-21927-CIV, 2013 WL 5534235, at *2 (S.D. Fla. Oct.

7, 2013) (quoting <u>Saadi v. Maroun</u>, No. 8:07–cv–1976–T–24–MAP, 2008 WL 4194824, at *4 (M.D. Fla. Sept. 9, 2008)).

Here, Bank of America allegedly engaged in outrageous conduct when its vendors entered the Delk Property, damaging property and even stealing an item. (Doc. 68 at 6.) The Delks argue that Bank of America's disregard of notices of its trespasses and repeated impairment of the Delks' ownership of their property further exemplify its outrageous conduct. (Doc. 69 at 16.) Bank of America, however, argues that "[t]here is no evidence that the acts enumerated in Plaintiffs' IIED claim occurred, and the enumerated acts would not amount to 'outrageous conduct.'" (Doc. 68 at 9.) For the following reasons, the Court agrees with the bank.

Seven allegations in the Second Amended Complaint specifically describe Bank of America's and/or its agents' actions which occurred in connection with its alleged trespasses: (1) breaking through a locked fence; (2) verbally assaulting the Delks and threatening physical harm if they did not leave the property; (3) conducting "certain activities" which damaged the partially constructed home and improvements, including damage to the doors, windows, masonry, and columns; (4) degrading the driveway with equipment and vehicles to the point that the Delks decided to regrade it; (5) damaging sprinklers heads and pipes; (6) causing members of the Delks' church and community to believe that the Delks had defaulted on a mortgage, undergone foreclosure, and had their property sold at a foreclosure sale; and (7) making statements to third parties that the Delks' property had been foreclosed and sold to

11

Bank of America, which damaged the Delks' reputation, name, and honor in their church and community. (See Doc. 20 at 18-19, 22-23.)

Applying the legal principles outlined above to these allegations, and construing the Delks' claims in the light most favorable to them, the undersigned finds that the Delks have failed to create an issue of fact for IIED because they have not established that Bank of America's conduct was "beyond all possible bounds of decency."

First, the Court considers the allegations of property damage which occurred during Bank of America's alleged trespasses. Bank of America asserts that there is no evidence that the acts alleged in the complaint even occurred. (Doc. 68 at 9.) Chad Anderson, Bank of America's corporate representative, testified that he found no documentation that the preservation workers damaged the Delk Property, nor any evidence that the Delks or other individuals notified the bank of damage. (Doc. 68-1 at 11.) Bank of America asserts that it deposed over a dozen potential witnesses, but none could attest to the damage complained of, or link the damage to the bank. (Doc. 68 at 8-9.)

Further, in the course of investigating the Delks' allegations, Bank of America uncovered evidence that at least some of the acts likely never occurred. For instance, Mr. Delk testified that Bank of America hired Village Pest Management to spray pesticide on the Delk Property, which somehow harmed the Delks' health. (Doc. 68-3 at 5.) But Robert Durham, the owner of Village Pest Management, testified that he had never sprayed pesticide on the Delk Property or been hired by Bank of America to do any work. (Doc. 68-4 at 5-7.) Instead, he had only driven onto the Delk Property

accidentally while looking for another house. (<u>Id.</u>) The Delks' response fails to address these arguments, and it remains unclear whether the property was sprayed with pesticide at all.

Overall, the Delks' response to the motion fails to direct the Court's attention to any specific evidence regarding Bank of America's enumerated acts, beyond stating that the Delks "submit that they did suffer actual damages to their property" and citing to the deposition transcript of their expert engineer, Gilberto Ramos. (Doc. 69 at 16.) Ramos testified that the cost of building materials increased by anywhere from five to thirty percent between 2011 and the present. (Doc. 69-9 at 36-37.) In addition, he briefly addressed a question regarding whether certain property damage, including scuffing, resealing windows, regrading the property, and replacing exterior doors and casings, was related to the delay in construction. He opined that the scuffing was associated with activities going on after the property was seized, but could not definitively state whether the cracking of the exterior was related to the delay, noting "it's subjective" and that "it may or may not have increased the size of the cracks that were observed. . . ." (<u>Id.</u> at 37.) He did not provide answers regarding the other damage specified, other than stating that the cost of wood increased.

The Delks do not otherwise point to evidence of the alleged damage to the fence, sprinklers, or other improvements, or provide photos, receipts, or records to show that any damage occurred, much less connect it to Bank of America's conduct. <u>See</u> <u>Morisky v. Broward Cnty.</u>, 80 F.3d 445, 447 (11th Cir. 1996) ("Rule 56(e) . . . requires that the nonmoving party go beyond the pleadings and by her own affidavits, or by the

'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial'").

Even considering all the facts and inferences in the light most favorable to the Delks, the Court cannot find that these enumerated instances of property damage (if they did occur) rise to the level of "atrocious" or "utterly intolerable in a civilized community."

Next, the Delks claim that when they confronted Bank of America during one of the trespasses, they were "verbally assaulted and threatened with physical harm if they did not leave their own property." (Doc. 20 at 18.) It remains unclear exactly what was said or who said it. See Saadi, 2008 WL 4194824, at *5 (allegations of "bullying, intimidation, and menacing" and making "written and verbal threats of physical violence" against plaintiff and his elderly father were considered a "vague reference to verbal threats" and insufficient to allow IIED claim to go forward). The Delks fail to reference any evidence describing this alleged verbal assault.

Moreover, it is well-settled under Florida IIED law that "[l]iability . . . does not extend to mere insults, indignities, threats, or false allegations." Williams v. Worldwide Flight Servs., Inc., 877 So. 2d 869, 870 (Fla. Dist. Ct. App. 2004) (constant use of derogatory racial terms in front of employee and other employees, and false accusations do not rise to level of outrageous conduct for IIED); see also Koutsouradis v. Delta Air Lines, Inc., 427 F.3d 1339, 1345 (11th Cir. 2005) (insults and indignities do not support claim for IIED); Saadi, 2008 WL 4194824, at *4. Allegations of verbal harassment, without significant physical attack, are insufficient to plead an

intentional infliction of emotion distress claim. See Bakar v. Bryant, No. 13-21927-CIV, 2013 WL 5534235, at *3 (S.D. Fla. Oct. 7, 2013) (dismissing IIED claim where defendant yelled and pounded on door in the early morning while trespassing on plaintiffs' family property); compare with Nims v. Harrison, 768 So. 2d 1198, 1199 (Fla. Dist. Ct. App. 2000) (sufficient allegations involved death threats, and threats to rape plaintiff's children and other family members). Here, the Delks' vague reference to verbal assault and threats of physical harm is insufficient for a claim of IIED.

Moreover, like their allegations of verbal assault, the Delks' claims that Bank of America's actions and statements to third parties damaged their reputation and caused them embarrassment are insufficient to state a claim for IIED. See Legrande v. Emmanuel, 889 So. 2d 991, 995 (Fla. Dist. Ct. App. 2004) (while being falsely branded a thief in front of parishioners might certainly be "unsettling, embarrassing, and/or humiliating" for clergyman, defendant's conduct did not meet "extreme and outrageous" standard). As with the incident of verbal assault, it is unclear what specific actions and statements occurred, who said what, when, and to whom, and the Delks again fail to cite any evidence that these alleged actions and statements ever happened. While Bank of America's actions, if true, might cause embarrassment in the community, as a matter of law, the Court cannot find its conduct would meet the "very high standard" of outrageousness required to prove this claim.

The Court has also considered the Delks' argument that Bank of America's disregard of notices of its trespasses and the resulting impairment of the Delks' ownership of their property constituted outrageous conduct. But under Florida law,

15

even allegations of "reprehensible, objectionable, and offensive" conduct have been rejected as insufficient to state a claim for intentional infliction of emotional distress. Bakar, 2013 WL 5534235, at *2 (citing Williams, 877 So. 2d at 870). With this standard in mind, even considering the ongoing nature of Bank of America's alleged conduct, as a matter of law, the conduct in question is not enough to rise to the level of outrageousness necessary to allow a claim for IIED.

Therefore, Bank of America's motion for summary judgment is due to be granted as to the IIED claims (Counts V and VI).[7]

### C.   Damages Available for Trespass[8]

Bank of America argues that, in the event that the Delks prevail on their trespass claims at trial, the Court should limit their recovery on those claims to nominal and property damages. (Doc. 68 at 15.) This preemptive request stems from deposition testimony indicating that the Delks seek $5 million through this action—$300,000 for expenses related to the Delks' property, and the remainder for loss of use, emotional distress, and pain and suffering. (Id.)

The Delks broadly respond that "they have demonstrated all of the facts that establish a cause of action for negligent or wrongful foreclosure and they are therefore not limited to the measure of damages for trespass . . . ." (Doc. 69 at 22.) As an initial

---

[7] Even though they do not support an IIED claim, some of these events, if they can be proven, might be admissible as to the remaining counts or as to damages.

[8] To the extent Bank of America is requesting that the Court foreclose any claim for punitive damages in connection with the trespass counts, the Court has addressed that issue in a separate Order and ruled that the Delks may seek punitive damages. (Doc. 82.)

matter, there is no claim for negligent or wrongful foreclosure before the Court. Regardless, Bank of America has not asked the Court to limit the damages available to the Delks on their claims for negligence[9] but instead specifies damages only as to the two trespass counts.

"'Trespass to real property is an injury to or use of the land of another by one having no right or authority.'" Glen v. Club Mediterranee, S.A., 450 F.3d 1251, 1254 n.1 (11th Cir. 2006) (quoting Guin v. City of Riviera Beach, 388 So. 2d 604, 606 (Fla. Dist. Ct. App. 1980)). "The usual measure of damages for trespass to real property is the difference in value of the property before and after the trespass." Horn v. Corkland Corp., 518 So. 2d 418, 420 (Fla. Dist. Ct. App. 1988); see also Atlantic C.L.R. Co. v. Rutledge, 156 So. 563, 565 (Fla. 1935); Leonard v. Nat Harrison Assoc., Inc., 122 So. 2d 432, 433 (Fla. Dist. Ct. App. 1960) ("[T]he plaintiff is entitled to at least nominal damages on proof of entry without consent."). If a plaintiff fails to prove actual damages, "the plaintiff is entitled to a judgment for nominal damages and costs." Bolus v. Morrison Homes, Inc., No. 808CV1957T23TBM, 2009 WL 4730601, at *4 (M.D. Fla. Dec. 9, 2009) (citing State v. Sarantopoulos, 604 So. 2d 551, 555 n.7 (Fla. Dist. Ct. App. 1992)). Damages for emotional harm are "outside the scope of the proper measure of damages for trespass." Jacobini v. JP Morgan Chase, N.A., No. 6:11-CV-231-ORL-31, 2012 WL 252437, at *4 (M.D. Fla. Jan. 26, 2012) (quoting Coddington v. Staab, 716 So.2d 850, 851 (Fla. Dist. Ct. App. 1998)).

---

[9] The Court has already ruled that the negligence claims may go forward.

The Delks' response provides no authority to support an award of damages for loss of use,[10] emotional distress, and pain and suffering in connection with their trespass claims. (Doc. 69 at 22.) Moreover, Florida courts have delineated the measure of damages for trespass to real property. Accordingly, Bank of America's motion is granted to the extent the Delks seek damages for emotional distress and pain and suffering in connection with their trespass claims. This ruling does not affect the measure of damages the Delks may pursue under their negligence counts.

### D.    Attorney's Fees and Costs

While the Delks suggest in their response that they will be entitled to costs and attorney's fees under Federal Rule of Civil Procedure 54(d) (Doc. 69 at 22), they withdrew that request at the November 16, 2015 hearing, and thus the issue is moot.

Accordingly, it is hereby

**ORDERED:**

1.    Defendant Bank of America's Motion for Partial Summary Judgment (Doc. 68) is **GRANTED** as to Counts V and VI (IIED) and **DENIED** as to Counts III and IV (negligence).

2.    Should the Delks prevail on their trespass claims at trial, they are limited to a recovery of nominal, property, and punitive damages.

---

[10] Because the Delks have not supported their claim of loss of use damages under their trespass counts, the Court need not determine whether a trespass claim allows loss of use damages in these circumstances. Cf. <u>Stockman v. Duke</u>, 578 So. 2d 831, 832 (Fla. Dist. Ct. App. 1991).

3.      By **January 21, 2016**, the Delks' counsel shall explain the deficiencies noted in footnotes 1-4 of this Order.

4.      Before proceeding to trial, the parties should conduct a settlement conference with a mediator of their choice or the Magistrate Judge. No later than **January 21, 2016**, the parties should file a notice either identifying a mediator or asking the Magistrate Judge to conduct a settlement conference. If the case does not settle, the Court will set the case for pretrial conference and trial.

**DONE AND ORDERED** in Jacksonville, Florida the 6th day of January, 2016.

TIMOTHY J. CORRIGAN
United States District Judge

sj
Copies to:

Counsel of record